**In re The OFFICE OF the ATTORNEY GENERAL, Relator.**

No. 01–08–00670–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Dec. 11, 2008.

Rehearing Overruled Jan. 16, 2009.

612

Beverly J. Duncan, Houston, TX, John B. Worley, Michael D. Becker, Rande K. Herrell, Assistant Attorneys General, Child Support Division/Appellate Litigation Section, Austin, TX, for Relator.

Linda G. Cryer, Houston, TX, for Real Party Interest.

1. The Honorable Lisa Millard, judge of the 310th District Court of Harris County, Texas. The underlying case is *In re K.D.P.*, No.2008–

Panel consists of Justices TAFT, KEYES, and ALCALA.

## OPINION

TIM TAFT, Justice.

Relator, the Office of the Attorney General ("OAG"), complains of the October 13, 2008 "First Amended Order Vacating Default Judgment" and of the August 8, 2008 "Order for Parentage Testing" signed by the trial judge[1] upon the granting of the bill of review of the real party in interest, Robert E. Phillips Jr. We determine (1) whether the trial judge abused her discretion in granting the bill of review and in vacating the underlying default judgment adjudging Phillips's paternity; (2) whether the trial judge abused her discretion in ordering paternity testing for purposes of retrial of the paternity action; and (3) whether an adequate remedy by appeal exists for either order. We conditionally grant the petition for writ of mandamus.

## Background

This mandamus proceeding arises out of two interlocutory orders that together granted a bill of review, set aside a default judgment of paternity, reinstated the paternity suit, and ordered paternity testing for purposes of retrial.

On August 1, 2007, the OAG filed a suit affecting the parent-child relationship ("SAPCR") to establish the parent-child relationship between Phillips and K.D.P., the child born to Beverly J. Duncan on October 28, 2004. It was undisputed that Phillips was served with citation on September 10, 2007, but that he did not file an answer. The SAPCR case was set for

17769, in the 310th District Court of Harris County, Texas.

hearing on November 15, 2007, and Phillips admitted receiving notice of the hearing date.

Phillips did not appear at the November 15 hearing, and the trial court rendered a default judgment against him that same day. The default judgment, among other things, established the parent-child relationship between Phillips and K.D.P.; established conservatorship of K.D.P.; and ordered Phillips to pay child support, both prospectively and retroactively.

The OAG and Phillips disputed in the later bill-of-review proceedings whether the trial-court clerk notified Phillips of the default judgment. Nonetheless, Phillips admitted that, on December 3, 2007—within the trial court's plenary power—he received notice that his wages were being garnished pursuant to the default judgment. It is undisputed that Phillips, who had not hired counsel at that point, did not file a motion for new trial in the suit or appeal the default judgment.

Instead, on December 21, 2007, Phillips administered a DNA test to himself and K.D.P. and sent the samples off for testing. The resulting paternity test report, dated December 28, 2007, excluded him as K.D.P.'s father. The report contained a notation that "[f]ailure to comply" (as happened here) with chain-of-custody measures "may render this report inadmissible in a court of law." The report was also not in admissible form and did not meet all of the Texas Family Code's substantive requirements. See TEX. FAM.CODE ANN. §§ 160.503(a), (b), 160.504(a) (Vernon 2002).

On March 25, 2008, Phillips—by then represented by counsel—timely filed a petition for bill of review to set aside the default judgment and to vacate the wage-withholding order. See TEX.R. CIV. P. 329b(f). He also sought attorney's fees and "exemplary damages" from Duncan

for acting with "conscious indifferences" [sic] for not having told him that he was not the only "recipient of her sexual activity" and thus not necessarily the father of K.D.P. The bill-of-review petition's allegations were supported by Phillips's affidavit:

> I was unable to attend the trial in this cause due to being trapped out of state under blizzard snow conditions. My inability to attend the trial in this case was not due to any fault or negligence on my part, but [was] a result of severe weather conditions that made travel impossible. Once I received notice of the wage withholding order, I immediately did paternity testing with the child in this case and learned that I was excluded as the biological father of [K.D.P.].

The OAG answered and raised various "affirmative defenses" that parallel the arguments that it raises before us. The OAG also specially excepted to the bill-of-review petition for not alleging the basic elements of a bill of review.

An associate judge heard the bill of review on April 30, 2008. Phillips testified that:

- he was notified of the November 15, 2007 hearing date;

- he went to Iowa from November 3, 2007 through November 22, 2007 to work;

- he was "snowed in" in Iowa around the time of the hearing;

- Duncan had nothing to do with the fact that he was in Iowa, and she did not prevent him from attending the hearing;

- he left messages on an answering machine at the OAG's office on November 14 and 15, 2007 that he could not make

the hearing;[2]

- the OAG did not call him back;
- he "was hoping" that the OAG would reset the hearing, based on his phone messages;
- he heard nothing until he received the notice of wage withholding on December 3, 2007;
- he did not file a motion for new trial;
- he learned from the December 28, 2007 genetic-testing report that he was not K.D.P.'s father; and
- the delay in his hiring counsel and filing his bill-of-review petition was due to his need to raise money to hire counsel.

The associate judge ruled that the bill of review be denied and the case be dismissed, concluding that "the prima facie requirement for establishing prima facie evidence and finding a meritorious defense has not been met." On May 1, 2008, the associate judge signed a report, in the form of a proposed "order denying bill of review," that denied the bill of review without stating his reasons and did not contain findings or conclusions. *See* TEX. FAM.CODE ANN. § 201.011(a) (Vernon Supp. 2008).

Phillips "appealed" the associate judge's report the next day by requesting a de novo hearing before the referring court. *See id.* § 201.015 (Vernon Supp.2008). The OAG objected to the request for a de novo hearing because (1) the pertinent statute required that the request specify the issues that would be presented to the referring court[3] and (2) the issues that Phillips specified were irrelevant to a bill-of-review proceeding. At the May 21,

2008 hearing, without taking any evidence, the trial judge sustained the OAG's objection and orally adopted the associate judge's proposed order. That same day, the trial judge signed an order reciting that it "sustained [the OAG's] Oral Motion to Dismiss" and adopted the associate judge's ruling as her own. *See id.* §§ 201.013(b), 201.014(a)(1) (Vernon Supp. 2008).

On June 18, 2008, Phillips moved for new trial of the May 21, 2008 ruling, and the OAG responded. The motion for new trial was heard on August 1, 2008. At the hearing, Phillips generally testified to the matters to which he had testified at the April 30 hearing, but added that his employer would not let him off his job in Iowa to attend the November 15 hearing and that Duncan "was not excited at all" and "wasn't surprised" when he told her that the paternity test had excluded him as the father. At the close of evidence, the trial judge orally granted the motion for new trial, ordered paternity testing, set "the case" for trial on October 13, 2008, and set the entry of the new-trial order for August 8, 2008.

On August 7, 2008, the OAG moved for reconsideration and to stay genetic testing. On August 8, 2008, the trial judge heard the OAG's motions and considered the entry of the new-trial order. At the start of the hearing, the OAG noted that Phillips's proposed order adjudicated the merits of the bill of review, rather than purporting just to grant the new-trial motion and to reinstate his request for a de novo hearing on his bill of review. However, the OAG did not object. Additionally, when the trial judge later advised the OAG that it had

---

**2.** At a later hearing on Phillips's request for de novo review of the associate judge's ruling, his counsel also admitted that Phillips never called the court to advise that he could not attend the November 15 hearing.

**3.** *See* TEX. FAM CODE ANN. § 201.015(b) (Vernon Supp.2008) ("A request for a de novo hearing under this section must specify the issues that will be presented to the referring court.").

granted Phillips's *bill of review* on August 1, 2008—rather than just reinstating his request for a de novo hearing on his bill of review—the OAG did not object, but instead proceeded to discuss the merits of the bill of review, as if it had been granted on August 1. Phillips did likewise. The trial judge's August 1 order granting a new trial thus became, as of August 8, an order granting the bill of review, and the parties then tried by consent reconsideration of that ruling. At the end of the hearing, the trial judge verbally denied the OAG's motions.

That same day, the trial judge signed an order entitled "Order Vacating Default Judgment," which vacated the November 15, 2007 default judgment. The order also contained the following recitation under the heading "Findings": "The Court finds that [Phillips] has made a prima facie showing of a meritorious defense and hereby ~~grants his Bill of Review and~~ vacates the November 15, 2007 Default Judgment in this cause." (The trial judge struck by hand the indicated text.) The order then set the trial "in this cause"—ostensibly now the adjudication of paternity itself, as there were no other matters to be tried after the bill of review had been granted and the default judgment set aside—for October 13, 2008. This August 8 order is the first order of which the OAG complains in this proceeding. Also on August 8, 2008, the trial judge signed a separate order requiring that genetic testing be completed before 5:00 p.m. that same day. The OAG also complains of this second August 8 order in this proceeding.

On August 14, 2008, the OAG filed its petition for writ of mandamus, complaining about the trial judge's two orders of August 8, 2008. On its motion, we stayed the order for genetic testing pending the disposition of the mandamus proceeding.[4] On October 31, 2008, Phillips filed a response to the OAG's petition for writ of mandamus.

After the mandamus petition was filed, the trial court rendered a series of oral and written rulings that culminated in a "First Amended Order Vacating Default Judgment," signed October 13, 2008. The October 13 amended order was identical to the August 8 order vacating the default judgment in all material respects except that it retained the language about granting the bill of review that had been struck from the "findings" in the August 8 order and added decretal language that "the Bill of Review is granted as of August 1, 2008." This amended order superseded the August 8 order and moots the OAG's complaint about the August 8 order. *See Anderson v. Teco Pipeline Co.,* 985 S.W.2d 559, 562 (Tex.App.-San Antonio 1998, pet. denied) (holding that later judgment, styled "amended final judgment," implicitly vacated earlier judgment, styled "final judgment"); *see also In re Messervey Trust,* No. 04-00-00700-CV, 2001 WL 55642, at *3 (Tex.App.-San Antonio Jan.24, 2001, orig. proceeding) (not designated for publication) ("We have no jurisdiction to issue a writ of mandamus based on the July 27 order because it has been super[s]eded by the September 1 order, rendering the earlier stay moot."). However, the OAG also complains in this proceeding about the October 13 amended order, and it is this order that we consider first. *See id.* at *3 (considering mandamus petition to extent that it challenged later order that

4. We have since been advised by the parties that, by the time that we ordered the stay, the genetic testing had already been conducted and the results had been distributed to the parties' counsel. Pursuant to our order, which contemplated this possibility because the trial judge's order had required *instanter* testing, the parties turned over the test results to the trial judge, who has sealed them.

superseded earlier order). As for the order granting paternity testing, the record indicates that it was vacated *sua sponte* on August 14, but that it was reinstated by order of the trial court on September 22, 2008. The OAG continues to challenge the reinstated order granting paternity testing, and we consider this order as well.

### Mandamus Standard

■ "We grant the extraordinary relief of mandamus only when the trial court has clearly abused its discretion and the relator lacks an adequate appellate remedy." *In re Team Rocket, L.P.*, 256 S.W.3d 257, 259 (Tex.2008).

### Standards for Bill of Review

#### A. Pleading

■ "A bill of review is an independent equitable action brought by a party to a former action seeking to set aside a judgment, which is no longer appealable or subject to motion for new trial." *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex.1979). The bill-of-review petition "must allege factually and with particularity that the prior judgment was rendered as the result of fraud, accident or wrongful act of the opposite party or official mistake unmixed with his own negligence." *Id.* at 408. "The [bill-of-review] complainant must further allege, with particularity, sworn facts sufficient to constitute [a meritorious] defense. . . ." *Id.*

#### B. Prima Facie Burden

■ "[A]s a pretrial matter," the complainant who is not alleging non-service[5] must additionally "present prima facie

proof to support the contention" that he has a meritorious defense, which has the purpose of assuring the court "that valuable judicial resources will not be wasted by conducting a spurious 'full-blown' examination of the merits." *Id.* Such a "prima facie meritorious defense is made out when . . . the complainant's defense is not barred as a matter of law and . . . he will be entitled to judgment on retrial if no evidence to the contrary is offered," which determination is "a question of law for the court." *Id.* at 408–09. "If the court determines that a prima facie meritorious defense has not been made out, the proceeding terminates and the trial court shall dismiss the case." *Id.* at 409. "On the other hand, if a prima facie meritorious defense has been shown, the court will conduct a trial." *Id.*

#### C. Complainant's Burden at Trial on the Merits

■ At the bill-of-review trial when, as here, the claimant does not allege non-service,[6] "[t]he complainant must open and assume the burden of proving that the judgment was rendered as the result of the fraud, accident or wrongful act of the opposite party or official mistake unmixed with any negligence of his own." *Id.* Standing alone, "the fact that an injustice may have occurred is not sufficient to justify relief by bill of review." *Temple v. Archambo*, 161 S.W.3d 217, 224 (Tex.App.-Corpus Christi 2005, no pet.).

### The Granting of the Bill of Review

#### A. Clear Abuse of Discretion

For the following reasons, we hold that the trial judge clearly abused her discre-

---

5. *Compare Caldwell v. Barnes*, 154 S.W.3d 93, 96 (Tex.2004) (holding that bill-of-review claimant alleging that he was not served with citation is relieved from prima facie burden of showing meritorious defense).

6. *Compare Caldwell*, 154 S.W.3d at 97 (holding that bill-of-review claimant alleging that he was not served with citation is relieved from showing that judgment was rendered as result of the fraud, accident, or wrongful act of opposite party or official mistake).

tion in rendering the October 13 "First Amended Order Vacating Default Judgment."

### 1. Fraud or Wrongful Act

 "Only 'extrinsic fraud' will support a bill of review." *Nelson v. Chaney,* 193 S.W.3d 161, 165 (Tex.App.-Houston [1st Dist.] 2006, no pet.). "Extrinsic fraud is fraud that is collateral to the matter being tried and prevents a litigant from having a fair opportunity to assert his rights at trial." *Id.* To the extent that the trial judge may have read Phillips's petition to allege that Duncan acted wrongfully by having concealed the possibility that someone else could have been K.D.P.'s father,[7] such matters have been repeatedly determined not to demonstrate extrinsic fraud and thus not to support a bill of review. *See id.* at 166; *In re Attorney Gen'l of Tex.,* 184 S.W.3d 925, 928 (Tex. App.-Beaumont 2006, orig. proceeding); *Martindale v. Reno,* 132 S.W.3d 462, 464–65 (Tex.App.-Eastland 2003, no pet.); *Ince v. Ince,* 58 S.W.3d 187, 191 (Tex.App.-Waco 2001, orig. proceeding), *overruled on other grounds by Ramsey v. State,* 249 S.W.3d 568, 577 (Tex.App.-Waco 2008, no pet.).

### 2. Official Mistake or Mistake or Accident of Opposing Party

 Phillips's position concerning accident was that the bad weather and the "accidental circumstances of his work out of state ... [and] his inability to get permission from his employer to return" precluded his attending the November 15 hearing. The "official mistake" that he contended occurred was rendition of a default paternity judgment against him when he was not the father. These allegations

and their supporting evidence do not meet the standard for accident or official mistake in the context of a bill of review. An "official mistake" merits the granting of a bill of review when "the petitioner can demonstrate that the judgment resulted from his reliance on a court officer who improperly executes his official duties." *Transworld Fin. Servs. Corp. v. Briscoe,* 722 S.W.2d 407, 408 (Tex.1987). " 'Accident' implies a ... joint responsibility, or freedom from fault, by both parties through which, by mischance, the complainant failed to urge his or her position in the former action." Roy W. McDonald & Elaine Grafton Carlson, 5 Texas Civil Practice, *Attacks on Judgments,* § 29:15, at 462–63 (2d ed.1999); Roger S. Baugh Jr. & Paul C. Sewell, *Equitable Bill of Review: Unraveling the Cause of Action That Confounds Texas Courts,* 48 Baylor L.Rev. 623, 634 (Summer 1996) (quoting McDonald & Carlson). Phillips's pleading and proof of official mistake and accident do not fit these criteria and thus will not support the granting of a bill of review.

### 3. Lack of Negligence by Phillips

 It was undisputed that Phillips failed to answer the SAPCR suit despite having been served with citation. This was negligence that would preclude the granting of a bill of review. *See Gone v. Gone,* 993 S.W.2d 845, 848 (Tex.App.-Houston [14th Dist.] 1999, pet. denied) (in appeal from denial of bill of review to set aside no-answer default judgment of divorce, in which trial court found that former husband presented no evidence as to why he failed to answer and in which

---

7. At the various bill-of-review hearings, Phillips inconsistently argued *both* that his petition alleged only a request for "punitive damages" and not Duncan's fraud or wrongful act *and* that the wrongful act that supported the granting of the bill of review was Duncan's

not considering that others could be the father. Phillips also testified that Duncan was not surprised when he told her that he was not the father, which could possibly be construed as supporting the latter argument that he made below.

former husband admitted being served, holding, "[T]he trial court correctly concluded that [former husband's] own negligence in failing to file an answer, unmixed with any other, resulted in the default judgment against him."). Additionally, "[r]elief by bill of review is available only if a party has exercised due diligence to pursue all adequate legal remedies against a former judgment and, through no fault of her own, no adequate legal remedy was available." *Hesser v. Hesser*, 842 S.W.2d 759, 765 (Tex.App.-Houston [1st Dist.] 1992, orig. proceeding, writ denied) (combined mandamus and appeal). It was undisputed that Phillips discovered the existence of the default judgment (by virtue of the wage-withholding notice that he received on December 3) within the trial court's plenary power, yet he did not move for new trial or file a direct appeal. Accordingly, the undisputed evidence showed that his own negligence contributed to the default judgment. *See id.* at 766; *see also Gold v. Gold*, 145 S.W.3d 212, 214 (Tex. 2004) ("If a motion to reinstate, motion for new trial, or direct appeal is available, it is hard to imagine any case in which failure to pursue one of them would not be negligence" that would preclude bill of review).

**B. Inadequate Remedy By Appeal**

 The order granting the bill of review in this case was interlocutory because it vacated the prior judgment and reinstated the original cause; no appeal lies from this interlocutory order. *See,*

*e.g., Jordan v. Jordan*, 907 S.W.2d 471, 472 (Tex.1995). Just because an interlocutory order is unappealable, however, does not mean that mandamus will lie to review it. "As a general rule, mandamus does not lie to correct incidental trial court rulings when there is a remedy by appeal." *In re Entergy Corp.*, 142 S.W.3d 316, 320 (Tex. 2004). "[T]he mere cost and delay of pursuing an appeal will not, in themselves, render appeal an inadequate alternative to mandamus review." *Id.* at 321. Nonetheless, "[i]n certain circumstances, ... incidental trial court rulings can be corrected by writ of mandamus" when "special, unique circumstances mandate[ ] the Court's intervention." *Id.; see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex.2004). What constitutes such special, unique circumstances is determined by a "careful balance of jurisprudential considerations" that seeks to answer whether "any benefits to mandamus review are outweighed by the detriments"—for example, in "exceptional cases" in which mandamus review is needed "to preserve important substantive and procedural rights from impairment or loss." *In re Prudential Ins. Co.*, 148 S.W.3d at 136 (citations omitted).

We first note that there is a split of authority among the courts of appeals—in cases not involving pending paternity suits in which genetic testing has been ordered—as to whether mandamus will lie to review the interlocutory granting of a bill of review.[8] However, for reasons that will

---

8. *Compare In re Moreno*, 4 S.W.3d 278, 281 (Tex.App.-Houston [14th Dist.] 1999, orig. proceeding) (holding that mandamus did not lie to review interlocutory grant of bill of review), *Tex. Mex. Ry. v. Hunter*, 726 S.W.2d 616, 617–18 (Tex.App.-Corpus Christi 1987, orig. proceeding) (same), *Stettner v. Apollo Paint & Body Shop, Inc.*, Nos. 01–02–00667–CV & 01–02–00204–CV, 2002 WL 1586282, at *1 (Tex.App.-Houston [1st Dist.] July 18,

2002, orig. proceeding, no pet.) (combined mandamus and appeal) (not designated for publication) (same), *and Ott v. Files*, No. 03–00–00612–CV, 2000 WL 1675737, at *1 (Tex. App.-Austin Nov.9, 2000, no pet.) (not designated for publication) (same, in dictum) *with In re Nat'l Unity Ins. Co.*, 963 S.W.2d 876, 877 (Tex.App.-San Antonio 1998, orig. proceeding) (holding that mandamus lies to review interlocutory grant of bill of review),

become evident below, we need not resolve this split to determine this appeal. We also note that three courts of appeals have held that mandamus lies to review the interlocutory granting a bill of review that is rendered in the context of a paternity suit in which genetic testing is ordered.[9] We, too, determine that mandamus will lie over this order in this case, but we do so for different reasons.

■■■ It is by now clear that mandamus is available to review an order for paternity testing that is erroneously entered *before* a parentage determination has been set aside. *In re Rodriguez*, 248 S.W.3d 444, 454 (Tex.App.-Dallas 2008, orig. proceeding); *In re Att'y Gen.*, 195 S.W.3d at 270–71; *see also Amanda v. Montgomery*, 877 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding). At least two reasons have been identified in support of such review: (1) the ordering of paternity testing is a discovery order, and no adequate remedy by appeal exists for production of unauthorized discovery (including discovery posing a heavy burden due to its being highly sensitive and personal) because, once it is produced, its effects cannot be undone[10] and (2) revealing the results of genetic testing may,

depending on the facts, cause permanent, irreparable harm to the child.[11]

■■■ The trial court coupled its order granting the bill of review with an order requiring paternity testing *just so that* the resulting evidence could be used upon retrial in the paternity suit. Of course, because the default judgment is currently set aside upon bill of review, there is now no longer any final parentage determination that would preclude paternity testing *unless and until* the bill-of-review order is reviewed, found to be erroneous, and set aside. *See Nelson*, 193 S.W.3d at 167 ("The sole question before the trial court ... was whether Nelson was entitled to relief by bill of review as a matter of law. *Had such a determination been made*, thus allowing Nelson to re-litigate the issue of paternity, *it would have been appropriate to order DNA testing*.") (emphasis added). The interlocutory grant of this bill of review is not subject to interlocutory appeal. *See Jordan*, 907 S.W.2d at 472. Review of this bill-of-review order can thus not occur until after final judgment in the new paternity suit unless mandamus review is available now. Although delay in appellate review alone is generally not enough to justify the issuance of mandamus,[12]

*Schnitzius v. Koons*, 813 S.W.2d 213, 218 (Tex.App.-Dallas 1991, orig. proceeding) (same), *and In re Tex. Dep't of Transp.*, No. 13–02–652–CV, 2003 WL 255941, at *2 (Tex. App.-Corpus Christi Feb.6, 2003, orig. proceeding) (memo.op.) (same).

9. One court held this solely on the basis that the order was not subject to interlocutory appeal. *See In re Att'y Gen.*, 162 S.W.3d 739, 741 (Tex.App.-Houston [14th Dist.] 2005, orig. proceeding). The second court reached this conclusion by following non-paternity-suit authority without discussing the specific context of the paternity suit. *See In re Att'y Gen.*, No. 04–00–00762–CV, 2001 WL 8547, at *1 (Tex. App.-San Antonio Jan.3, 2001, orig. proceeding) (not designated for publication). The

third court did not express its rationale. *See In re Office of Att'y Gen.*, 193 S.W.3d 690, 694–95 (Tex.App.-Beaumont 2006, orig. proceeding).

10. *See In re Att'y Gen.*, 195 S.W.3d 264, 270 (Tex.App.-San Antonio 2006, orig. proceeding); *Amanda v. Montgomery*, 877 S.W.2d 482, 487 (Tex.App.-Houston [1st Dist.] 1994, orig. proceeding).

11. *See In re Att'y Gen.*, 195 S.W.3d at 270; *In re Rodriguez*, 248 S.W.3d 444, 454 (Tex.App.-Dallas 2008, orig. proceeding).

12. *See In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex.2004).

here, if review cannot be had until after the paternity retrial, then the results of the paternity testing will necessarily be divulged and used—and any harm arising from their revelation will occur—before an appellate court can even determine if the default judgment could have been be set aside and the case retried. This situation fits the parameters of what constitutes an inadequate remedy by appeal: once the test results are divulged, the information that they contain cannot be retracted, and any resulting harm to the child may be irreparable. *Cf. In re Rodriguez*, 248 S.W.3d at 454; *In re Att'y Gen.*, 195 S.W.3d at 270; *see also Amanda*, 877 S.W.2d at 487. The benefits to mandamus review in this context thus outweigh the detriments. *See In re Prudential Ins. Co.*, 148 S.W.3d at 136.

For these reasons, we hold that no adequate remedy by appeal exists for this interlocutory bill-of-review order and that, consequently, mandamus review is available.

### The Ordering of Genetic Testing and Order Reinstating Same

The trial judge ordered paternity testing only after she had granted the bill of review and vacated the November 15, 2007 default judgment. The paternity-testing order was thus a discovery order that was ancillary to the paternity suit that the judge had resurrected by her bill-of-review ruling.

 Only the proper granting of a bill of review allows the trial court to set aside a prior final judgment, not void on its face for want of jurisdiction, over which the court's plenary jurisdiction has expired. *See* Tex.R. Civ. P. 329b(f) ("On expiration of the time within which the trial court has plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause . . . ."); *see also*

*Tidwell v. Tidwell*, 604 S.W.2d 540, 542 (Tex.Civ.App.-Texarkana 1980, no writ) (providing that, when voidable judgment "has become final and the time has elapsed for the filing of an appeal or an appeal by writ of error, the judgment can only be set aside by bill of review timely filed."). Because the trial judge abused her discretion in granting the bill of review, she necessarily abused her discretion in vacating the default judgment. Once the amended order vacating the default judgment is set aside pursuant to our decision, the default judgment adjudicating Phillips's paternity will again be the controlling judgment.

 "A trial court abuses its discretion when a child's paternity has been legally established and it orders genetic testing before a parentage determination has been set aside." *In re Rodriguez*, 248 S.W.3d at 451; *accord, e.g., In re Att'y Gen.*, 195 S.W.3d at 269; *see also Amanda*, 877 S.W.2d at 487. This line of authority applies by analogy to the paternity-testing order here because, after this proceeding, the default judgment of paternity will again be in effect, and there will no longer be a "live" paternity case to which the test results could be relevant. *Cf. Nelson*, 193 S.W.3d at 167 (in appeal of denial of bill of review, after which ruling trial court nevertheless had ordered paternity testing, concluding in dictum that trial court abused its discretion in ordering testing because "the trial court's order effectively facilitated the gathering of evidence to undermine a final judgment that as a matter of law could not be upset.").

Because we hold that the trial judge abused her discretion in granting the bill of review and in vacating the default judgment of paternity, we also hold that the trial judge abused her discretion in ordering paternity testing and in signing the order reinstating that ruling.

## Conclusion

We conditionally grant the petition for writ of mandamus and order the trial judge to take the following actions:

- to vacate its October 13, 2008 "First Amended Order Vacating Default Judgment";
- to vacate its August 8, 2008 "Order for Parentage Testing";
- to vacate its related September 22, 2008 "Order Reinstating Order Granting Motion for New Trial and Vacating Default Judgment" in its entirety; and
- to maintain under seal the results of the genetic testing that are currently under seal with the trial court and to grant the relief requested in the OAG's August 22, 2008 "Motion for Protective Order Regarding Genetic Test Information" immediately upon issuance of this Court's opinion.
- to certify to the Clerk of this Court, in writing, within 10 days of the date of this opinion, that the actions herein required have been completed.

The writ will issue only if the trial judge fails to act in accordance with the orders contained within this opinion.

The Court's August 18, 2008 stay order remains in effect until the trial judge complies with the orders contained in this opinion.

We overrule Phillips's September 30, 2008 motion to order the sealed paternity-testing results to be filed in this Court.